## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
)
NEW MEXICO )
DEPARTMENT OF INFORMATION )
TECHNOLOGY, )
)
)
*Plaintiff*, )
)
v. )    Case No. 1:07-cv-01603-CKK
)    Judge Kollar-Kotelly
U.S. DEPARTMENT OF HEALTH )    Administrative Agency Review
AND HUMAN SERVICES, )
)
and )
)
MICHAEL O. LEAVITT )
Secretary of the Department of Health )
  and Human Services, )
)
*Defendants*. )
———————————————————— )

## STATEMENT OF GENUINE ISSUES

In accordance with Local Rule 56.1, and in support of its Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, Plaintiff New Mexico Department of Information Technology ("New Mexico" or "the State") submits the following statement of material facts as to which there a genuine dispute among the parties. The paragraphs below are numbered to correspond with, and respond directly to, the numbered paragraphs in Defendants' Statement of Material Facts Not in Genuine Dispute.

    1.    New Mexico does not dispute the facts set forth in this paragraph.

    2.    New Mexico does not dispute the facts set forth in this paragraph.

3.      New Mexico disputes the characterization of this action as an appeal.  In this action, New Mexico seeks declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.  Complaint ¶¶ 1, 5-8, Request for Relief.  New Mexico does not otherwise dispute the remaining facts set forth in this paragraph.

4.      New Mexico does not dispute the facts set forth in this paragraph.

5.      New Mexico disputes the characterization of the June 22, 2006 letter from the Division of Cost Allocation (DCA) of the United States Department of Health and Human Services (HHS).  In that letter, DCA asserted that the total amount owed by New Mexico was $4,011,031 (not $4,022,031).  That amount includes pre-disallowance interest but does not include post-disallowance interest.  AR 29-31.[1]  New Mexico does not otherwise dispute the remaining facts set forth in this paragraph.

6.      New Mexico does not dispute the facts set forth in this paragraph.

7.      New Mexico disputes the statements in this paragraph because they mischaracterize New Mexico's statewide cost allocation plan (SWCAP) and are incomplete. New Mexico's SWCAP simply describes a mid-year adjustment to billing rates that the State may make.  AR 244.  New Mexico's SWCAP did not establish a single adjustment methodology and did not specify any particular methodology for calculating overcharges and undercharges. New Mexico did not perform a mid-year realignment of billing rates during State Fiscal Year (SFY) 2004.  AR 256.  Even if billing rates were to be adjusted mid-year, there would virtually always be some difference between the revenues received via billing rates and the actual costs of the services in question.  This difference might arise, for instance, from a change in staffing

---

[1] Throughout this statement, citations to "AR __" refer to the administrative record of the appeal filed by the New Mexico General Services Department before the Departmental Appeals Board (DAB) of the United States Department of Health and Human Services (HHS).

levels or usage levels.  AR 256.  Moreover, even if billing rates should have been adjusted mid-year but were not, any adjustment for any difference between cost and revenue would still have to be calculated in accordance with controlling cost principles.  New Mexico's SWCAP provided that "[a]djustments for variances between billed costs and the actual allowable costs of providing the services, as defined by OMB Circular A-87, will be made in accordance with procedures agreed to between the State/locality and the Cognizant Agency."  AR 239.

8.    New Mexico disputes the statements in this paragraph because they are incomplete.  In SFY 2004 and the four preceding fiscal years, New Mexico used the cost-based rates originally calculated for SFY 1999.  From SFY 2005 forward, the State has implemented updated cost-based rates.  AR 70, 254-55.

9.    New Mexico disputes the characterization of Robert Peters's statement as an admission, insofar as that characterization implies that the statement concedes a fact material to the State's claim for relief.  The record contains a statement by Robert Peters indicating that the State has experienced delays in submitting its SWCAP.  AR 310.  OMB Circular A-87 imposes no penalty for late submission of the SWCAP.  *See* AR 224; Office of Management and Budget, Final Revision to OMB Circular A-87, 60 Fed. Reg. 26,484 (May 17, 1995) ("Circular A-87"), Att. C., ¶ D.4.

10.    New Mexico asserts that its briefs to the Departmental Appeals Board (DAB) of HHS speak for themselves, but does not otherwise dispute the facts set forth in this paragraph.

11.    New Mexico asserts that its briefs to the DAB speak for themselves, but does not otherwise dispute the facts set forth in this paragraph.

12.    New Mexico asserts that its briefs to the DAB speak for themselves, and that it would be clearer and more complete to describe New Mexico's calculations as follows: The State's refined, federal-program-specific analysis, which took into account both overcharges and undercharges, showed that the federal share of the State's total overcharge to the Human Services Department (HSD) was $1,683,715. The State did not contest DCA's calculation of a $66,676 overcharge for the Children, Youth, and Families Department (CYF) and the Department of Health (DOH). Thus, the total principal amount of debt acknowledged by the State was $1,750,391. Pre-disallowance interest on this amount (from June 30, 2004, the end of SFY 2004, to June 22, 2006, the date of the disallowance letter), is $101,802. The total correct base disallowance amount is thus $1,852,193. Post-disallowance interest on this base amount accrues at the annual rate of 12.125%, without compounding. AR 77-78, 194, 258-60, 277, 294; 45 C.F.R. Part 30. New Mexico further asserts that the DAB's opinion speaks for itself. New Mexico does not otherwise dispute the facts set forth in this paragraph.

13.    New Mexico asserts that the DAB's opinion speaks for itself, but does not otherwise dispute the accuracy of the quotation set forth in this paragraph.

14.    New Mexico asserts that the DAB's opinion speaks for itself, but does not otherwise dispute the accuracy of the paraphrase set forth in this paragraph.

15.    New Mexico disputes the characterization of Circular A-87 set forth in this paragraph. This paragraph is incomplete because it states that Circular A-87 "does not list offsetting over or under-charges as an adjustment method," without also acknowledging that Circular A-87 does not list as an adjustment method selectively aggregating overcharges while disregarding undercharges supported by the same data and same calculation methodology. In fact, the circular does not speak in terms of overcharges or undercharges at all. The circular does

list four adjustment methods, and all of those methods are designed to account for situations where cost exceeds revenue (loss) as well as situations where revenue exceeds cost (profit) from the provision of central services.  *See* Circular A-87, Att. C, ¶ G.4 (providing that "an *adjustment will be made for the difference* between the revenue and the allowable costs") (emphasis added). New Mexico does not seek an adjustment method other than one listed in Circular A-87; rather, it seeks an adjustment method (a refund to the federal government) calculated in accordance with the principles of Circular A-87.

Respectfully submitted,

___/s/___Charles A. Miller_____
Charles A. Miller (D.C. Bar No. 8904)
Susannah Vance (D.C. Bar No. 496163)
Leah Pogoriler (D.C. Bar No. 973827)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-6000

*Attorneys for New Mexico Department of Information Technology*

January 10, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NEW MEXICO DEPARTMENT OF INFORMATION TECHNOLOGY, | ) ) ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) ) | Case No. 1:07-cv-01603-CKK Judge Kollar-Kotelly Administrative Agency Review |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) | |
| and | ) ) | |
| MICHAEL O. LEAVITT Secretary of the Department of Health and Human Services, | ) ) ) ) | |
| *Defendants.* | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Charles A. Miller
Susannah Vance
Leah Pogoriler
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-5410

*Attorneys for New Mexico Department of Information Technology*

January 10, 2008

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 1

I.      This Court Can and Should Order Declaratory and Injunctive Relief. ............................ 1

II.     This Court Should Reject Defendants' Forfeiture Argument............................................ 4

        A.      The Disallowance Calculated By DCA Constitutes a Forfeiture. ........................... 4

        B.      Forfeitures are Disfavored in General and Are Not Permitted in this Case. ........... 5

        C.      No Theory Propounded by Defendants Justifies the Imposition of a Forfeiture..... 7

                1.      The Undercharges Were Timely and Appropriately Claimed.................. 7

                2.      There Is No Punitive Time Limit on the Making of Equitable Adjustments. ...................................................................................... 8

                3.      The State Did Not Subject Itself to Forfeiture on Any Other Ground. ... 10

III.    Defendants' Position is Flawed in Other Respects.......................................................... 13

        A.      Defendants' Position is Inconsistent with the Cost Principles on Which They Purport to Rely. .................................................................................................. 13

        B.      The Other Authorities Cited by Defendants Do Not Support Their Position........ 15

CONCLUSION................................................................................................................ 18

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)...................................................................2

*Caton v. Leach Corp.*, 896 F.2d 939 (5th Cir. 1990)...........................................................5

*Colorado Department of Social Services v. United States Department of Health &
    Human Services*, 29 F.3d 519 (10th Cir. 1994) ...........................................................15

*Colvin v. Sullivan*, 939 F.2d 153 (4th Cir. 1991)...............................................................15

*Delta Foundation, Inc. v. United States*, 303 F.3d 551 (5th Cir. 2002)............................16

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ...............................................2

*George Hyman Construction Co. v. Brooks*, 963 F.2d 1532 (D.C. Cir. 1992)...................3

*Insurance Co. v. Norton*, 96 U.S. 234 (1878) .....................................................................7

*Maine v. Shalala*, 81 F. Supp. 2d 91 (D. Me. 1999).........................................................16

*NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969)............................................................2

*Norwest Bank Minn., N.A. v. FDIC*, 150 F. Supp. 2d 124 (D.D.C. 2001)...........................3

*Norwest Bank Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447 (D.C. Cir. 2002)........................3

*PPG Industries v. United States*, 52 F.3d 363 (D.C. Cir. 1995) .........................................2

*State of Kansas v. Shalala*, 859 F. Supp. 484 (D. Kan. 1994)..........................................15

*State of Kansas v. Shalala*, 884 F. Supp. 413 (D. Kan. 1995)..........................................15

*United States v. Borromeo*, 945 F.2d 750 (4th Cir. 1991) ..................................................5

*United States v. National Steel Corp.*, 767 F.2d 1176 (6th Cir. 1985) ...........................5, 6

*United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219 (1939)........5, 6

*United States v. One Parcel of Real Property*, 964 F.2d 1244 (1st Cir. 1992)...................5

*Universal Sales Corp. v. California Press Manufacturing Co.*, 128 P.2d 665 (Cal.
    1942) ...........................................................................................................................5, 6

## DEPARTMENTAL APPEALS BOARD CASES

*Arkansas Department of Information Systems*, DAB No. 2010, 2006 WL 321179
    (2006) ...................................................................................................................17

*Idaho Division of Financial Management*, DAB No. 1822, 2002 WL 464464
    (2002) .............................................................................................................16, 17

*Illinois Department of Administrative Services*, DAB No. 271, 1982 WL 189556
    (1982) ...................................................................................................................13

*Maryland Department of Health & Mental Hygiene*, DAB No. 1909, 2004 WL
    714960 (2004) ......................................................................................................16

*New Mexico General Services Department*, DAB No. 1876, 2003 WL 21043171
    (2003) ................................................................................................................9, 17

*South Carolina Department of Social Services*, DAB No. 612, 1984 WL 250039
    (1984) ...................................................................................................................16

*West Virginia Department of Administration*, DAB No. 1465, 1994 WL 321796
    (1994) .............................................................................................................16, 17

## FEDERAL STATUTES

Administrative Procedure Act (APA), 5 U.S.C. § 706 ........................................................1

## FEDERAL REGISTER

Office of Management and Budget, Proposed Revisions to OMB Circular No. A-
    87, 58 Fed. Reg. 44,212 (Aug. 19, 1993)..........................................................9

Office of Management and Budget, Final Revision to OMB Circular A-87, 60
    Fed. Reg. 26,484 (May 17, 1995) .....................................3, 4, 6-9, 10-14, 17

## FEDERAL POLICY GUIDANCE

United States Department of Health and Human Services, A Guide for State,
    Local and Indian Tribal Governments, ASMB C-10 (April 8, 1997) ("ASMB
    C-10") ................................................................................... 3, 6-7, 9, 13

## INTRODUCTION

In this action, Plaintiff New Mexico Department of Information Technology ("New Mexico" or "the State") seeks declaratory and injunctive relief from a decision by the United States Department of Health and Human Services (HHS) to impose on the State a disallowance of $4,011,031, even though the actual State overcharge to federal programs was only $1,852,193. New Mexico moved for summary judgment on December 21, 2007, Doc. 14, and hereby opposes HHS's motion for summary judgment, Doc. 11 (Dec. 11, 2007).

## ARGUMENT

The decision of the Departmental Appeals Board (DAB) of HHS to uphold the disallowance calculated by HHS's Division of Cost Allocation (DCA) was arbitrary and capricious and in violation of controlling legal principles. The reasons this Court should so hold were outlined in the memorandum in support of New Mexico's motion for summary judgment, Doc. 14 [hereinafter "Plaintiff's Memorandum"], which is incorporated by reference herein, and are further outlined below.

## I.    This Court Can and Should Order Declaratory and Injunctive Relief.

If this Court determines that HHS's decision was arbitrary and capricious, it has the authority to provide the declaratory and injunctive relief that New Mexico seeks. It is not true that "if the Court holds the agency decision to be unlawful, the only remedy is a remand to the agency to reconsider the matter," as Defendants state, Defendants' Memorandum of Points and Authorities, Doc. 11 (Dec. 11, 2007) [hereinafter "Defendants' Memorandum"], at 11.

Under the Administrative Procedure Act (APA), "[t]he reviewing court shall . . . (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Under the plain

terms of the APA, then, this Court is empowered to hold the $4,011,031 disallowance unlawful, to set it aside, and to compel agency action unlawfully withheld – that is, adjustment of the disallowance to the lawful amount ($1,852,193).

The Supreme Court has made this exact point in discussing the scope of federal court review of HHS disallowances: "It seems perfectly clear that, as 'the reviewing court,' the District Court [has] the authority to 'hold unlawful and set aside agency action' that it [finds] to be 'not in accordance with law.' As long as it [has] jurisdiction under § 702 to review the disallowance orders of the Secretary, it also [has] the authority to grant the complete relief authorized by § 706." *Bowen v. Massachusetts*, 487 U.S. 879, 911 (1988); *see also id.* at 909-10 (in State's action for declaratory and injunctive relief, district court properly "reversed" DAB decisions and ordered permissible "specific relief").

New Mexico is not asking this Court to compile a new factual record, which was the Court's concern in *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985), the source of the dictum cited by Defendants. Defendants' Memorandum at 11-12. The State is simply asking this Court to apply the law to the undisputed facts and to order the relief appropriate under that law.

It is true that the district court's role in an APA action is generally analogous to that of an appellate tribunal, and that consequently the usual course of action once the district court "determines that an agency made an error of law" is to remand the case "to the agency for further action consistent with the corrected legal standards." *PPG Indus. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995). Nevertheless, where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6. (1969). Rather, where the court

"find[s] that a remand would be futile on certain matters as only one disposition is possible as a matter of law," it may "retain and decide the issue." *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1539 (D.C. Cir. 1992); *see also Norwest Bank Minn., N.A. v. FDIC*, 150 F. Supp. 2d 124, 131 (D.D.C. 2001) (stating that the remand rule is "not absolute" and that a remand "would . . . be an unnecessary formality"), *vacated on other grounds by Norwest Bank Minn. Nat'l Ass'n v. FDIC*, 312 F.3d 447 (D.C. Cir. 2002) (action was untimely).

In this case, remand would be an unnecessary formality. Correct application of Office of Management and Budget (OMB) Circular A-87, OMB, Final Revision to OMB Circular A-87, 60 Fed. Reg. 26,484 (May 17, 1995) ("Circular A-87"), and of the HHS *Guide for State, Local and Indian Tribal Governments*, ASMB C-10 (April 8, 1997) ("ASMB C-10"), can lead to only one possible outcome: the conclusion that undercharges must be taken into account, and that the correct disallowance amount is $1,852,193. (Although the DAB *sua sponte* raised some concerns regarding the State's calculation of the $1,852,193 sum, *see* AR 20-26, its concerns were unfounded, were not raised by DCA before the DAB, and are not advanced by Defendants before this Court.[1] These points are insufficient to support a remand to the DAB.)[2]

---

[1] Defendants mention in passing that the DAB noted that generally costs incurred in one year are not allocable to later years, Defendants' Memorandum at 15, but they do not argue before this Court, and did not argue before the DAB, that there was any improper carry-forward in this case. Presumably they have never pressed the point because the beginning fund balance used by the State complied with the clear policy guidance in ASMB C-10, which states that in the reconciliation of an internal service fund's (ISF's) retained earnings balance pursuant to Circular A-87, the beginning balance is "the ending balance from the previous year's reconciliation schedule." ASMB C-10, Instructions for Illus. 4-7; *id.* Illus. 4-7; *id.* ¶ 4.7. The "beginning fund balance" figures used in the State's calculations are clearly the beginning fund balances contemplated by ASMB C-10, they are clearly marked as positive or negative as appropriate, and they are the very same numbers that DCA, fully aware of what they meant, used in its own calculations. AR 140, 193-205, 278-93.

[2] Defendants' arguments concerning the level of deference due to the agency have been addressed in New Mexico's opening memorandum. Plaintiff's Memorandum at 12-13. Before

**II.     This Court Should Reject Defendants' Forfeiture Argument.**

Defendants' position before this Court is premised on the notion that at some earlier point in time, New Mexico *could* have calculated the adjustment required by Circular A-87 in the manner the State now proposes, but that "New Mexico has missed its window of opportunity."  Defendants' Memorandum at 14; *see also id.* at 16 (referring to "lost opportunity" on State's part).  Defendants argue that the State did not act quickly enough to make an equitable adjustment, and that various alleged "failures" by the State justify the massive disallowance.  *Id.* at 21.  In short, Defendants are advocating for imposing a major forfeiture on the State.  That approach is inconsistent with federal law in numerous respects.

**A.     The Disallowance Calculated By DCA Constitutes a Forfeiture.**

In their motion for summary judgment and supporting documents, Defendants do not argue that the actual overcharge to the federal government is $4,011,031, or that $4,011,031 represents the amount that the federal government is actually due because of its overpayments for computer services it consumed.  And, by the same token, Defendants do not argue that $1,852,193 does *not* represent the actual overcharge to the federal government, or that this amount falls short of the amount the federal government is due.

These silences are telling.  They reveal the fundamental lack of any factual dispute about the amount of money the State actually owes to the federal government under federal cost principles.  As the State argued in the memorandum supporting its motion for summary judgment, the reality is that the refund calculated by the State accurately and reliably

---

this Court, Defendants advance the contention that their position is entitled to extra deference because it "an agency's interpretation of its own regulations."  Defendants' Memorandum at 11. It suffices to note that the governing circular being interpreted was not issued by DCA, the DAB, or any other component of HHS, but rather by OMB, a separate Executive-branch entity.

measures and reimburses for the impact on federal programs, while the adjustment calculated by DCA does not.  Plaintiff's Memorandum at 18-21.

Because Defendants cannot and do not confront the State's calculations head-on, they are left to argue that the State has somehow lost the very right to make these calculations. Stated differently, Defendants' position is that the State has forfeited the right to make a refund in the amount by which federal programs were actually overcharged, and that it has forfeited over $2 million as a consequence.

B.     Forfeitures are Disfavored in General and Are Not Permitted in this Case.

Federal courts have long recognized that forfeitures are disfavored.  *See, e.g.*, *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939) ("Forfeitures are not favored[.]"); *United States v. One Parcel of Real Property*, 964 F.2d 1244, 1248 (1st Cir. 1992) ("[F]orfeitures are strong medicine, disfavored in our jurisprudence."); *United States v. Borromeo*, 945 F.2d 750, 752 (4th Cir. 1991) (describing forfeiture as a "traditionally-disfavored remedy"); *United States v. Nat'l Steel Corp.*, 767 F.2d 1176, 1184 (6th Cir. 1985) (citing "the general proposition that equity and the law abhor forfeitures").

As a consequence of the disfavor in which forfeitures are held, courts also recognize that a forfeiture should only be enforced when the applicable authority – a statute, a contract, or the like – clearly requires it.  *See, e.g.*, *One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. at 226 (forfeitures "should be enforced only when within both letter and spirit of the law"); *Caton v. Leach Corp.*, 896 F.2d 939, 946 (5th Cir. 1990) (instructing district court to construe contract "in light of [State's] 'settled policy of the law not to enforce a forfeiture in the absence of a clear statement to that effect'" and citing rule that "[t]he burden is upon the party claiming a forfeiture to show that such was the unmistakable intention of the instrument") (some internal quotation marks omitted) (quoting *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 128

P.2d 665, 677 (Cal. 1942)); *United States v. Nat'l Steel Corp.*, 767 F.2d at 1184 ("[F]orfeitures

are to be strictly construed."). Thus, applying the commonsense assumption that a requirement

of forfeiture – particularly an unfair or "drastic" one – "probably would be expressed in language

sufficiently plain to admit no reasonable doubt," courts have required "unclouded language" that

"compel[s] the conclusion" that the forfeiture is intended. *One 1936 Model Ford V-8 De Luxe

Coach*, 307 U.S. at 236-37.

In this case, the applicable federal cost principles do not provide for, and cannot

conceivably be construed to contemplate, the forfeiture argued for by Defendants. Certainly

there is no explicit forfeiture provision in Circular A-87 or in ASMB C-10. Nor is there any

implicit forfeiture requirement. On the contrary, Circular A-87 articulates the principle that

federal programs should "bear their fair share of cost" unless some law prevents them from

doing so. Circular A-87, Att. A, ¶ A.1. And speaking directly to the calculation of the refund

due to the federal government in this case, the circular provides in neutral terms that "an

*adjustment* will be made for *the difference* between the revenue and the allowable costs." *Id.*

Att. C, ¶ G.4 (emphasis added). HHS's policy guidance for Circular A-87 reiterates that there

are "*four methods* for adjusting internal service funds (billed central services) *for profits or

losses* realized from operations." ASMB C-10 ¶ 4-12 (emphasis added). This clear language is

bolstered by the fact that OMB intended the provisions at issue to provide States and units of

local government with "more options and flexibility in making adjustments to federal awards."

60 Fed. Reg. at 26,489.

ASMB C-10 also makes clear that "[t]he primary concern" in "select[ing] the

method of recovery" is "the assurance that the Federal programs charged in a given year receive

an *equitable and appropriate* adjustment for the *over/under billings*." *Id.* ¶ 4-14 (emphasis

added).  This focus on equity as a driving force in the adjustment calculation makes forfeiture particularly inappropriate, especially where the State has agreed to pay the federal government an amount that would fully compensate it for the amount it actually overpaid.  *See Ins. Co. v. Norton*, 96 U.S. 234, 242 (1878) ("Forfeitures are not favored in the law.  They are often the means of great oppression and injustice.  And, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture, upon such compensation being made.").

C.    No Theory Propounded by Defendants Justifies the Imposition of a Forfeiture.

Defendants have not justified the over $2 million forfeiture they seek to impose on the State by pointing to any provision of Circular A-87 or any other authority  that would support such a forfeiture.  Instead, they rely on several propositions that turn out to be red herrings: that under rules of individual federal programs, the State did not timely and appropriately claim federal reimbursement for the undercharges; that under Circular A-87 and ASMB C-10, the State missed its chance to make an equitable adjustment; and that the State's other putative failures justified a disallowance of more than double the amount by which federal programs were actually overcharged.  None of these arguments has merit.

1.    The Undercharges Were Timely and Appropriately Claimed.

Defendants repeatedly assert, but do not substantiate, the view that the undercharges in this case were not timely and appropriately claimed from federal programs. Defendants' Memorandum at 12 & n.7, 14, 15, 19.  Apparently as a corollary to this assertion, Defendants state that "the offset of an undercharge equates to the payment of an undercharge." *Id.* at 5.  Defendants' position is not consistent with the reality of this case.

The federal government is not being asked to pay and is not paying the State any amount of money as of the moment the State pays a refund amount that takes undercharges into

account.  The federal government has long since paid to the State all of the money that the State

claims it should be paid, and more.  All federal programs that consumed computer services were

overcharged by the State.  AR 88-90, 260, 277.  The question is not whether any federal program

(or the federal government as a whole) must pay additional money to the State, but rather how

much money the State must return.  In calculating the amount the State must return, taking

undercharges into account does not amount to a *new* (and potentially untimely or improper)

claim under any federal program.  Rather, taking undercharges into account reflects an accurate

calculation of the exact amount by which each specific federal program was overcharged on

claims the State has *already* made – claims already deemed timely by each federal program,

already deemed under the maximum cap for each federal program, and already deemed

otherwise allowable for each federal program.  Stated differently, the State's refund calculation

operates to reduce prior claims, not to augment them; taking undercharges into account simply

avoids an excessive reduction.

      2.    <u>There Is No Punitive Time Limit on the Making of Equitable Adjustments.</u>

Defendants state that "the adjustment options in Attachment C, ¶ G.4 are options

for adjusting for variances in a given fiscal year," and that "New Mexico, in its approved

SWCAP for State Fiscal Year (SFY) 2004, adopted alternative (b)."  Defendants' Memorandum

at 13.  Defendants further assert that although a State "may debit [an individual federal] program

for a loss resulting from an undercharge for [a] service[,] . . . there are time restrictions for doing

so."  *Id.*  These assertions are incorrect, and cannot support the forfeiture that Defendants seek to

impose.

New Mexico's SWCAP for SFY 2004 did not adopt alternative (b) for adjusting

for variances between costs and claims.  To the contrary, it specified that "[a]djustments for

variances between billed costs and the actual allowable costs of providing the services, as

defined by OMB Circular A-87, will be made in accordance with procedures agreed to between the State/locality and the Cognizant Agency." AR 239. At no time did the parties ever agree that only a certain one of the four adjustment options listed in Attachment C, paragraph G.4 would be followed.

As to Defendants' second point, the State's memorandum in support of its motion for summary judgment explained that Circular A-87 not only does not impose a time limit for making an adjustment based on the annual reconciliation of revenues and costs, but in fact reflects OMB's deliberate *rejection* of just such a requirement. *See* Plaintiff's Memorandum at 16-17; Circular A-87, Att. C, ¶ G.4 (employing "at least annually" language in connection with the cost/revenue comparison requirement, but not the adjustment requirement); OMB, Proposed Revisions to OMB Circular No. A-87, 58 Fed. Reg. 44,212, 44,230 (Aug. 19, 1993) (proposed version, later rejected by OMB, would have provided that "[i]ndividual billing rates will be reviewed and adjusted to actual costs at least annually"). The State has also explained that the individual adjustment methods are defined by Circular A-87 in terms of their structure, not their timing; and that ASMB C-10 speaks only to the time period for which certain adjustment methods are effective, not the time periods during which they must be implemented.[3] Plaintiff's Memorandum at 16-17; Circular A-87, Att. C., ¶ G.4; ASMB C-10, ¶ 4-12.

---

[3] As the State argued before the DAB, ASMB C-10's timing language, *see* ASMB C-10, ¶ 4-12, means that method (b) adjustments are effective in the current fiscal year, not that they must be made in the current fiscal year. *See* AR 85-86 & n. 20. The DAB has recognized as much, *see New Mexico Gen. Servs. Dep't.*, DAB No. 1876, 2003 WL 21043171 (2003), and indeed, the adjustment could never be implemented during the same year in which the cost/revenue difference arose, because cost/revenue settlements are not even completed until after the end of the year. By a similar token, method (c) adjustments are made in the "next open fiscal period" under ASMB C-10, ¶ 4-12, meaning that the State may make the adjustment for the next fiscal year for which rates are to be set. AR 86.

In any event, even if the State waited too long to avail itself of the adjustment option it is said to have selected in its SWCAP, *some* adjustment would still be necessary under Circular A-87, Attachment C, ¶ G.4.  The adjustment method at issue in this case is the refund method, as implemented by a disallowance.[4]  Thus, it is beside the point for Defendants to assert that "[o]ffsetting over or under-charges is not an adjustment method under A-87."  Defendants' Memorandum at 4.  New Mexico does not claim that "offsetting" is an adjustment method.  The question is not what adjustment method applies, but how the applicable method – the refund method – is to be calculated.  Defendants have not provided any support for their position that the refund method, as distinct from all the others, takes into account only overcharges and ignores undercharges.  That position is inconsistent with clear authority showing that the refund method, like the others, is designed to take undercharges into account.  Plaintiff's Memorandum at 13-16.

       3.    <u>The State Did Not Subject Itself to Forfeiture on Any Other Ground.</u>

Defendants argue that the DAB "properly took into consideration New Mexico's actions and/or inactions that led to the disallowance," and that "had New Mexico followed the terms of its SWCAP, timely filed its claims for costs, and performed mid-year 'realignments' and annual adjustments of billing rates, there would have been no need to consider the issues New Mexico presents regarding offsetting of claims."  Defendants' Memorandum at 19-20.

---

[4] Defendants state that "New Mexico has missed its window of opportunity to make adjustments and credits pursuant to Attachment C, ¶ G.4," Defendants' Memorandum at 14, but New Mexico does not understand Defendants to be asserting that the disallowance in this case may be calculated in a manner inconsistent with Paragraph G.4.  Defendants refer to the disallowance as a "refund," *see id. passim*, and there is no authority that would suggest that a refund implemented via a disallowance may be calculated without regard to the principles that generally apply to the calculation of a refund under Paragraph G.4.

These assertions are erroneous in numerous respects. First, as explained above, New Mexico did timely and appropriately claim all costs; the question now is not the propriety of any new or unclaimed costs, but the calculation of the refund of already claimed costs.

Second, the SWCAP for SFY 2004 simply describes a mid-year adjustment to billing rates that the State may make.[5] AR 244. There is no requirement under Circular A-87 that the State make a mid-year adjustment to billing rates. *See* Circular A-87, Att. C. In any event, the SWCAP language cited by Defendants is directed only toward the billing process. Further, nothing in the SWCAP rules out any adjustment method for purposes of settling accounts with the federal government after the cost/revenue reconciliation following the end of each year. The SWCAP did not establish a specific method for making adjustments, did not state that overcharges and undercharges would be calculated in a particular manner, and did not state that undercharges would be ignored. In addition, the "mid-year realignment" language must be read in light of the SWCAP's provision that "[a]djustments for variances between billed costs and the actual allowable costs of providing the services, as defined by OMB Circular A-87, will be made in accordance with procedures agreed to between the State/locality and the Cognizant Agency," AR 239, and in light of the fact that Circular A-87 does not require the State to commit only to one adjustment methodology in its SWCAP and to forfeit its right to pursue any of the others.

Moreover, assuming *arguendo* that the State was required to (but did not) "perform[] mid-year 'realignments' and annual adjustments of billing rates," it is simply not

---

[5] Defendants state that an affidavit presented by the State to the DAB "represents the first time that DCA was made fully aware that New Mexico was not performing the mid-year adjustment." Defendants' Memorandum at 21. Whether or not New Mexico had explicitly discussed mid-year adjustments with DCA, DCA could easily ascertain that the State was not conducting such adjustments from the materials that the State shared for the SWCAP for each fiscal year.

correct to assert that such a course of action on the State's part would have obviated the need to take undercharges into account (or the need to consider the propriety of doing so).  No matter how often billing rates are adjusted, there will always be at least some difference between revenues (based on estimated costs) and actual allowable costs, meaning that some adjustments will always be required under Circular A-87.  AR 74, 256.  And the frequency with which the necessary adjustments are made has no bearing on the type of difference for which an adjustment must be made: that is, making frequent adjustments does not mean the only differences that arise will be overcharges.  Some undercharges will inevitably exist, and will inevitably need to be adjusted for.  Thus, even if the State had adjusted its billing rates or made other adjustments as often as twice a year, it would still need to perform a cost/revenue reconciliation after the end of each year; that reconciliation would still reveal the existence of both undercharges and overcharges; and a proper adjustment – that is, an adjustment taking into account both undercharges and overcharges – would still have to be made pursuant to Circular A-87.  As noted above, nothing in the State's SWCAP indicated that undercharges would not exist or would not be taken into account for purposes of adjustments.

Furthermore, even if the State should have made more frequent adjustments as putatively required by its SWCAP, it does not follow that the State's failure to do so justifies the imposition of a $2 million forfeiture.  Requiring the State to pay more than double the amount of the actual overcharges to the federal government is simply not authorized by Circular A-87.  Likewise with respect to the State's acknowledged lateness with submitting its SWCAP: the circular imposes no penalty for this type of lateness.  *See* Circular A-87, Att. C., ¶ D.4.  Although the circular does not authorize the drastic and punitive steps taken by HHS, it does provide an incentive against delay.  As the State explained in the memorandum it submitted in support of its

motion for summary judgment, interest accrues on excess funds held in an internal service fund (ISF), and the State must pay the federal government interest for the federal share of the excess balances.  Circular A-87, Att. C, ¶ E.3.b.1; ASMB C-10, Instructions on Illus. 4-7, ¶ 4, AR 186.

## III.    Defendants' Position is Flawed in Other Respects.

### A.    Defendants' Position is Inconsistent with the Cost Principles on Which They Purport to Rely.

As outlined above and in the memorandum in support of New Mexico's motion for summary judgment, only the refund calculated by the State, and not the refund sought by HHS, complies with applicable cost principles.  Without repeating those points here, it is worth noting that the basic cost principles recognized by Defendants actually work in New Mexico's favor.  For instance, Defendants rely on *Illinois Dep't. of Admin. Servs.*, DAB No. 271, 1982 WL 189556 (1982), for the proposition that New Mexico should have known that it could not expect undercharges to be taken into account as part of the adjustment made in connection with the cost/revenue reconciliation it performed.  Defendants' Memorandum at 18.

In fact, *Illinois* stressed that costs should be allocated in accordance with benefits received.  *See Illinois Dep't. of Admin. Servs.*, DAB No. 271 (determinative fact was that "costs were not allocated in accordance with benefits received").  For this reason, it was improper for Illinois to deliberately undercharge users of certain computer equipment while making up the costs of that equipment by overcharging users of other computer equipment; "users of the other computer equipment were in effect being billed for services from which they did not benefit." *Id.*  The driving principle here is a primary tenet of Circular A-87: "[a] cost is allocable to a particular cost objective if the goods or services involved are chargeable or assignable to such cost objective in accordance with relative benefits received."  Circular A-87, Att. A, ¶ C.3.a; *see*

*also id.* Att. C, ¶ A.1 (goal is "a process whereby . . . central service costs can be identified and assigned to benefitted activities on a reasonable and consistent basis").

This principle is honored by New Mexico's calculation of the correct refund, but not by HHS's.  That is because allocating costs in accordance with benefits received and avoiding cost-shifting are two sides of the same coin.  Both values are served by taking undercharges into account in a federal-program-specific manner; neither is served by disregarding undercharges.

New Mexico's methodology is program-specific: the State determined the exact overcharge to each federal program.[6]  *See* Plaintiff's Memorandum at 9-10 & nn. 6-7.  Because the State was able to trace overcharges and undercharges to specific federal programs for the exact services consumed by those programs and billed to those programs, the State's approach does not result in cost-shifting.  The refund calculated by the State reimburses the federal government for the exact total by which all federal programs were actually overcharged.  *See id.* at 19-20 & n.13, 22; *see also* Defendants' Memorandum (not suggesting otherwise).  By taking undercharges into account in a federal-program-specific manner, the State not only avoids cost-shifting, it allocates costs in accordance with relative benefits received: the $1,852,193 refund exactly returns to the federal government, in a manner traceable to individual federal programs, the amounts that the programs overpaid for computer services, in proportion to the benefits they received from the specific computer services they consumed and the amounts they actually overpaid.

---

[6] It should be noted that all of the cost settlement findings resulted from the *same* audit process – a process fully compliant with the requirements of Circular A-87 – and the *same* calculation methodology.  The overcharges and undercharges were equally documented, equally reliable, and equally precise.  *See* AR 83-84.

By contrast, the disallowance sought by DCA results in cost-shifting and does not correlate actual charges (as adjusted by the refund) to actual benefits received.  If HHS recovers $4,011,031 from the State, it will be recovering more than $2 million more than the amount by which federal programs were actually overcharged.  Instead of tracing costs and benefits to individual federal programs, this methodology provides a windfall to the federal government.  Over $2 million in costs of computer services that should be borne by the federal programs that benefited from those services would be shifted to the State.  As a result, federal programs would not be bearing costs in relation to the benefits they received; they would be enjoying benefits funded at the State's expense.

B.     The Other Authorities Cited by Defendants Do Not Support Their Position.

Defendants cite an extensive series of court cases and administrative rulings, all presented for the proposition that the DAB's decision to uphold the $4,011,031 disallowance was consistent with DAB and federal court precedent.  Defendants' Memorandum at 17-19.  In fact, the cited cases do not support the $4,011,031 disallowance.

For the most part, the court decisions do not even deal with calculating the adjustments relating to billed central services, much less with the issue of whether such adjustments ought to take undercharges into account.  They address a claimant's (usually a State's) ability to make *retroactive*, increased claims to a specific federal program, using data created by "backcasting" current data to prior years.  *See Colorado Dep't of Soc. Servs. v. United States Dep't of Health & Human Servs.*, 29 F.3d 519 (10th Cir. 1994); *Colvin v. Sullivan*, 939 F.2d 153 (4th Cir. 1991); *State of Kansas v. Shalala*, 884 F. Supp. 413 (D. Kan. 1995); *State of Kansas v. Shalala*, 859 F. Supp. 484 (D. Kan. 1994).  New Mexico is not seeking to make retroactively augmented claims.  In fact, the State has already claimed – indeed, overclaimed –

from each federal program, all of the claims have been deemed timely and appropriate and have been paid, and the only issue is how much the State should refund.

Other decisions and rulings cited by Defendants are even further afield. *See Maine v. Shalala*, 81 F. Supp. 2d 91 (D. Me. 1999) (State had never filed claims for certain costs, those claims probably would have been denied even if timely filed, and State's approach would have resulted in shifting costs to other federal programs); *Maryland Dep't of Health & Mental Hygiene*, DAB No. 1909, 2004 WL 714960 (2004) (State's claim was untimely, and case did not involve central services); *Idaho Div. of Fin. Mgmt.*, DAB No. 1822, 2002 WL 464464 (2002) (State sought to reduce disallowance for overcharges in ISF by pointing to expenditures that were not claimed as part of ISF costs, that fell outside the SWCAP, and that were unrelated to the purposes of the ISF); *West Virginia Dep't of Admin.*, DAB No. 1465, 1994 WL 321796 (1994) (State had never filed claim for costs, and the unclaimed costs were for a fund separate from the one that overcharged federal programs); *South Carolina Dep't. of Soc. Servs.*, DAB No. 612, 1984 WL 250039 (1984) (State's claims were untimely, and case did not involve central services). As stated above, New Mexico has already filed claims, and those claims have been deemed timely and appropriate.[7] The undercharges that New Mexico believes should be taken into account relate to documented, allowable costs of services that were provided pursuant to (not outside) the SWCAP and that were consistent with (not unrelated to) the purposes of the

---

[7] New Mexico's argument certainly is not that HHS is required to "accept [the State's] 'good word' in place of the required documentation." *Delta Foundation, Inc. v. United States*, 303 F.3d 551, 570 (5th Cir. 2002). New Mexico's claims documentation has long ago been submitted to and accepted by the relevant federal programs.

*sole* central services ISF in question.  Moreover, as noted above, New Mexico's federal-program-specific methodology eliminates any risk of cost-shifting.[8]

      Nor do the cases cited by Defendants that actually pertain to central services aid Defendants' cause.  Defendants cite several DAB cases in which the States sought to utilize "unclaimed costs" in ways the DAB found inconsistent with Circular A-87.  *See, e.g.*, *Arkansas Dep't. of Info. Sys.*, DAB No. 2010, 2006 WL 321179 (2006); *Idaho Div. of Fin. Mgmt.*, DAB No. 1822; *West Virginia Dep't of Admin.*, DAB No. 1465.  By contrast, all of the undercharges in this case were represented by timely and appropriate claims to the federal funding agency.  No claims are being added; rather, claims are being reduced.

      In the previous DAB New Mexico case so strongly relied on by Defendants (*New Mexico Gen. Servs. Dep't.*, DAB No. 1876, 2003 WL 21043171 (2003)), the DAB treated the undercharges as if they had not been claimed from the appropriate federal funding agencies.  Defendants quote that portion of the DAB's decision in that case, stressing that "the additional charges would never pass through the normal claiming process at all."  Defendants' Memorandum at 19 (quoting *New Mexico Gen. Servs. Dep't.*, DAB No. 1876).  That is not the situation in this case, where the State's claims did pass through the normal claiming process.  Nothing is being added to those claims.  The portion that reflected overcharges in each instance exceeded the portion that reflected undercharges.  Thus, contrary to Defendants' assertion,

---

[8] It is worth noting that, before this Court, Defendants do not argue that New Mexico's approach would result in cost-shifting between federal programs or from State to federal programs.  *See* Defendants' Memorandum.  Moreover, the DAB determined that the State was "not seeking here to offset over- and undercharges at the bottom line," and that "the potential for shifting of costs from non-federal to federal programs" and other concerns were not present in this case to the same degree as they were in the *Arkansas* cases.  AR 18; *cf. Arkansas Dep't. of Info. Sys.*, DAB No. 2010, 2006 WL 321179 (2006).  (The DAB's remaining cost-shifting concern, pertaining to prior year costs, is addressed above.  *See* p.3 n.1, *supra*.)

recognizing the undercharges would in no way "undermine the filing requirements for federal grants." *Id.*[9] Taking account of the undercharges in this case complies with the claiming rules of individual federal programs and vindicates federal cost principles – indeed, it is the only way to do so.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendants' Motion for Summary Judgment.

Respectfully submitted,


__/s/ _ Charles A. Miller _____
Charles A. Miller (D.C. Bar No. 8904)
Susannah Vance (D.C. Bar No. 496163)
Leah Pogoriler (D.C. Bar No. 973827)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-5410


*Attorneys for New Mexico Department of*
*Information Technology*


January 10, 2008

---

[9]  To the extent the earlier *New Mexico* case and the *Arkansas* cases construe Circular A-87 and ASMB C-10 as permitting a refund calculation that considers only overcharges while ignoring undercharges that were within the total claims submitted to particular federal funding agencies, the decisions are not in accord with those issuances for the reasons set forth above and in the State's opening memorandum, and the decisions in any case are not binding on this reviewing Court.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10th day of January, 2008, I caused the foregoing

Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary

Judgment, and the attached Statement of Genuine Issues and Proposed Order to be served on

Mercedeh Momeni, counsel for Defendants, via the Court's Electronic Case Filing system.

      /s/    Leah Pogoriler
Leah Pogoriler
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-6000

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                               )
NEW MEXICO                                     )
DEPARTMENT OF INFORMATION                      )
TECHNOLOGY,                                    )
                                               )
                                               )
                    *Plaintiff*,               )
                                               )
         v.                                    )     Case No. 1:07-cv-01603-CKK
                                               )     Judge Kollar-Kotelly
U.S. DEPARTMENT OF HEALTH                       )     Administrative Agency Review
AND HUMAN SERVICES,                            )
                                               )
         and                                   )
                                               )
MICHAEL O. LEAVITT                             )
Secretary of the Department of Health          )
  and Human Services,                          )
                                               )
                    *Defendants*.              )
_____)


## <u>ORDER</u>

Having considered Plaintiff's Motion for Summary Judgment, documents

submitted in support thereof, and any opposition and replies thereto; and Defendants' Motion for

Summary Judgment, documents submitted in support thereof, and any opposition and replies

thereto, the Court hereby finds, based on the undisputed facts, that Decision No. 2083 (May 17,

2007) of the Departmental Appeals Board (DAB) of the United States Department of Health and

Human Services (HHS) and the underlying disallowance assessed by the Division of Cost

Allocation (DCA) of HHS were arbitrary and capricious, an abuse of discretion, and contrary to

the requirements of federal law.

It is hereby ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED and that Defendants' Motion for Summary Judgment is DENIED.

It is further ORDERED that judgment declaring that DAB Decision  No. 2083 was arbitrary and capricious, an abuse of discretion, contrary to the requirements of federal law, unlawful, null, void, and of no legal effect, shall be entered.

It is further ORDERED that a permanent injunction requiring Defendants to modify the amount of the disallowance against Plaintiff from $4,011,031 to $1,852,193, shall be issued.


It is so ORDERED this _____ day of _____, 2008.


_____

Judge Kollar-Kotelly
United States District Judge


The following attorneys are entitled to be notified of the entry of the foregoing Order:

Charles A. Miller
Susannah Vance
Leah Pogoriler
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004


Mercedeh Momeni
Assistant United States Attorney
555 4th Street, NW
Washington, DC  20530