IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW MEXICO DEPARTMENT OF INFORMATION TECHNOLOGY, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> and <br><br> MICHAEL O. LEAVITT <br> Secretary of the Department of Health and Human Services, <br><br> *Defendants*. | Case No. 1:07-cv-01603-CKK <br> Judge Kollar-Kotelly <br> Administrative Agency Review |

**REPLY MEMORANDUM
IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Charles A. Miller
Susannah Vance
Leah Pogoriler
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-5410

*Attorneys for New Mexico Department of Information Technology*

February 22, 2008

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.    The Excessive Recovery Is Not Justified. ........................................................................... 2

        A.    The Undercharges Were Properly Substantiated. ..................................................... 2

        B.    New Mexico's Alleged Failure to Adjust Billing Rates in Accordance With Its SWCAP Does Not Justify the Excessive Recovery. ................................................ 3

        C.    The Determination of DCA Does Not Conform to The Requirements of Circular A-87. .................................................................................................... 4

        D.    There Was No Delay By the State That Would Justify The Punitive Recovery Sought by Defendants. ............................................................................................. 6

II.    Other Contentions of Defendants Are Without Merit. ........................................................ 8

        A.    Forfeiture Is An Appropriate Description of The Position Advocated by Defendants. ............................................................................................................... 8

        B.    This Court Should Determine the Proper Disallowance Amount. .......................... 9

CONCLUSION ............................................................................................................................. 10

CERTIFICATE OF SERVICE ..................................................................................................... 12

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*LaShawn A. by Moore v. Barry*, 144 F.3d 847 (D.C. Cir. 1998) ...................................................10

*Sims v. Apfel*, 530 U.S. 103 (2000) ..............................................................................................9

*Terry v. Reno*, 101 F.3d 1412 (D.C. Cir. 1996) ............................................................................10

**FEDERAL REGISTER**

Office of Management and Budget (OMB) Circular A-87, OMB, Final Revision to OMB
    Circular A-87, 60 Fed. Reg. 26,484 (May 17, 1995)...................................................... 1, 4-11

**FEDERAL POLICY GUIDANCE**

*A Guide for State, Local and Indian Tribal Governments*, ASMB C-10 (Apr. 8, 1997)..... 5, 10-11

## INTRODUCTION

This case comes to this Court for decision, on the parties' cross motions for summary judgment, in the following posture:

1.  The excess amount that federal government programs were charged by New Mexico for information services in State fiscal year (SFY) 2004 was $1.85 million. <u>This fact is not in dispute.</u>[1] It was determined by an after-the-fact cost reconciliation conducted under State auspices in a manner approved by the cognizant federal agency (the Division of Cost Allocation (DCA), a component of the Department of Health and Human Services (HHS)). The results of the reconciliation were used by DCA in its disallowance determination.

2.  The amount DCA seeks to recover from New Mexico is $4 million. This figure was determined by including the larger overcharges calculated in the reconciliation and ignoring all of the undercharges, even though they related to the same federal programs and even though the total charged to each federal program exceeded what the proper charge to that program should have been.

What the Court is asked to decide is whether this recovery, which seems on its face unjustified, and contrary to the controlling federal policy that federal programs "bear their fair share of cost,"[2] is warranted.

---

[1] New Mexico has already paid to the federal government the undisputed principal amount of $1.85 million, plus approximately $320,000 in interest. *See* Consent Motion to Supplement the Record (filed concurrently with this reply) and Proposed Supplemental Record (PSR) at 1-8.

[2] Office of Management and Budget (OMB) Circular A-87, OMB, Final Revision to OMB Circular A-87, 60 Fed. Reg. 26,484, 26,484 (May 17, 1995) ("Circular A-87"), Attach. A, ¶ A.1

1

# ARGUMENT

**I.    The Excessive Recovery Is Not Justified.**

The principal justifications proffered by Defendants to support a $4 million recovery in the face of a $1.85 million overcharge are (a) that the undercharges were not "substantiated," (b) that New Mexico did not follow the method for adjusting overcharges and undercharges set forth in its cost allocation plan (called a SWCAP); and (c) that New Mexico waited too long to seek inclusion of the undercharges in the determination of the amount due to the federal programs.  None of these grounds is sufficient to sustain the patently unfair result that Defendants seek to defend.

   A.    <u>The Undercharges Were Properly Substantiated.</u>

Defendants' efforts to portray the undercharges as "unsubstantiated," Def. Opp'n at 2,[3] is essentially a red herring.  All costs relating to information services were billed to State agencies and by them to federal programs using DCA-approved cost allocation methodologies. The final overcharge and undercharge amounts were determined in exactly the same manner as part of the same after-the-fact reconciliation of costs to revenues.   DCA utilized the results of the reconciliation without raising any question as to their validity or accuracy.  Thus, the overcharges and undercharges were "substantiated" in exactly the same manner.

Defendants' arguments defeat their claim that the undercharges were "unsubstantiated."  They acknowledge that they would not have resorted to a cash recovery if the State had followed other prescribed methods for adjusting overcharges and undercharges, and concede that under those other methods the undercharges as well as the overcharges would have

---

[3] Defendants' Reply in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment, Doc. 18 (Feb. 5, 2008), is cited throughout this Reply as "Def. Opp'n."

2

been included in the calculation of any recovery. This alone establishes that the undercharges were "substantiated."

Contrary to Defendants' suggestion, *see* Def. Opp'n at 5, there were no further claims to any federal program required with respect to the undercharges to complete their "substantiation." Every federal program has already been billed and has paid more than its proper share of the costs of the information services internal service fund (ISF). Thus, every program is entitled to a share of the amount to be returned to the federal government. The fact that the State did not bill the federal programs even more does not entitle those programs to receive more than the overall amount they overpaid.

    B.    <u>New Mexico's Alleged Failure to Adjust Billing Rates in Accordance With Its SWCAP Does Not Justify the Excessive Recovery.</u>

The heart of Defendants' defense of the DCA $4 million recovery determination is that New Mexico failed to follow a method for adjusting overcharges and undercharges set forth in its approved SWCAP for SFY 2004 (the "mid-year realignment" provision), and that by failing to do so New Mexico lost its opportunity to have the undercharges considered in determining the amount owed to federal programs. *See* Def. Opp'n at 8-11, 13-14. According to Defendants, once having elected an adjustment method in its SWCAP the State was not free to elect a different option to make the adjustment. *Id.* at 10.

The parties obviously differ on the meaning of the "mid-year realignment" provision in the SWCAP. *See* Pl.'s Opp'n Mem., Doc. 16, at 11-12. But even if the provision could be read, as Defendants assert, to specify a method for adjusting for differences between billed and actual costs, it would not support the $4 million recovery being pursued by Defendants in this case.

3

First, by expressly referring to "any over/<u>under</u> recovery," AR 244 (emphasis added), the SWCAP provision relied on by Defendants actually refutes Defendants' argument that the SWCAP supports a recovery that considers only overcharges and not undercharges.

Second, nothing in the SWCAP says or implies that the billing rate modification discussed in the "mid-year realignment" provision constitutes an exclusive means of adjusting for differences between billed and actual charges.

Third, there is not a word in the SWCAP that suggests that failure to pursue the "mid-year realignment" process would subject the State to a recovery that was not determined in accordance with the adjustment provisions of Circular A-87.

Finally, even if the State failed to implement the SWCAP "mid-year realignment" provision that represented its election as to the means <u>it</u> would pursue to adjust billed charges to actual costs, that would not free DCA to ignore the adjustment provisions of Circular A-87, which contemplate the consideration of undercharges under any of the four adjustment options. *See* Memo. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. ("Pl. Memo."), Doc. 14, at 13-16. In the absence of the State's implementation of its chosen option, DCA was free to and did elect the cash refund method of adjustment. But it was not free to distort that method, prescribed in Circular A-87, by ignoring undercharges and calculating a recovery based only on overcharges.

In short, the SWCAP, on which Defendants rely so heavily, provides no justification for the one-sided determination that Defendants seek to defend.

C. <u>The Determination of DCA Does Not Conform to The Requirements of Circular A-87.</u>

Defendants accuse the State of seeking to "provide a post-hoc alternative to the SWCAP," and they refer to the State's calculation of the amount due as an "alternative scheme" or an "alternative analysis that was never part of its SWCAP." Def. Opp'n at 13. These

4

assertions actually reveal how weak the Defendants' case is for their punitive assessment. The State is not offering any "alternative" to its SWCAP. Rather, it is responding to an attempt by DCA to distort one of the four options (the cash refund option) provided in Circular A-87 that DCA selected for adjusting for variances between billed and actual costs. What Defendants label an "alternative analysis" is simply the correct calculation of the refund due under the cash refund option selected by DCA.

The State has shown, *see* Pl. Memo., Doc. 14, at 13-16, that each of the adjustment methods authorized by Circular A-87 is intended to take into account undercharges as well as overcharges, and that this understanding has been clearly set forth in policy guidance (*A Guide for State, Local and Indian Tribal Governments*, ASMB C-10 (Apr. 8, 1997) ("ASMB C-10")) issued by HHS to interpret Circular A-87. Defendants make no effort to rebut this showing. To the contrary, they cite and quote one of the passages from the policy guidance document that supports the conclusion that the adjustment methods are to take account of both undercharges and overcharges, *see* Def. Opp'n at 10, without apparent recognition of how it supports the State's position and rejects theirs.[4]

By requiring consideration of undercharges as well as overcharges, Circular A-87 reinforces its policy that costs should be accurately aligned to programs based on the benefits received by those programs. *See* Circular A-87, Attach. A, ¶ C.3.a; *id.* Attach. C, ¶ A.1. The DCA determination resulted in a misalignment of costs and program benefits, and a consequent

---

[4] Defendants apparently believe that this passage supports their view that the State failed to meet certain time limits, and that this justified DCA in deviating from the even-handed method of calculating adjustments specified in Circular A-87 and elaborated in the policy guidance. But there is not a word either in Circular A-87 or the policy guidance to support the conclusion that this would be an appropriate response to a State's delay in completing the reconciliation process or in making the required adjustments on its own.

5

shift to the State of costs that actually benefited federal programs. The State's calculation results in an accurate alignment of costs charged to programs based on the benefits received by those programs, consistent with the purpose of Circular A-87.

    D.    <u>There Was No Delay By the State That Would Justify The Punitive Recovery Sought by Defendants.</u>

The State characterized Defendants' action in this case as imposing a penalty on the State for not submitting reconciliation data and making the required adjustments on a timely basis. In a classic example of bureaucratic double-speak, Defendants deny that their conduct amounts to a penalty. Rather, quoting the Departmental Appeals Board (DAB), Defendants say that "to determine that a state has lost an opportunity to recover federal funds that it could have recovered had it timely followed federal requirements" is not tantamount to imposing a penalty for failing to meet a time limit. Def. Opp'n at 8.

What counts is not the semantics but the actual conduct. Defendants' position is that a recovery of $4 million rather than $1.85 million is permissible because New Mexico failed to meet time limits that Defendants claim are applicable.

So what is the alleged time limit that, according to Defendants, New Mexico failed to meet? Apart from the claimed failure of the State to follow its SWCAP (discussed above), Defendants merely refer to the "time sensitive nature of alternatives (b) and (c)" of the Circular A-87 options, and to the requirement that cost reconciliations be done "at least annually." *Id.* at 10.

The truth is that, as shown in Plaintiff's Opposition Memorandum, Doc. 16 at 7-9, not only does Circular A-87 not contain any time limits relevant to this case, OMB specifically modified the language of the Circular to remove any implication that there were time limits for making the required adjustments.

6

There are time limits that relate to federal reimbursement of program costs, including costs of an ISF like that involved in this case:

- *the time limit for filing claims with specific federal programs*. New Mexico has already made timely filings of all claims covering SFY 2004 costs of the information services ISF, all of which have been reviewed, accepted, and paid by the federal programs.

- *the time for reconciling billed to actual costs*. Circular A-87 provides that this calculation "will be made at least annually," Circular A-87, Attach. C, ¶ G.4, and seems to assume that it will be included in the SWCAP. New Mexico has submitted a SWCAP for each State fiscal year containing cost reconciliation data for the information services ISF. *See* Plaintiff's Memorandum in Support of Summary Judgment, Doc. 14, at 17 n.12. Defendants do not contend otherwise.

- *the time limit for filing the SWCAP*. Circular A-87, Attachment C, paragraph D.4 indicates that SWCAPs generally should be submitted "within six months prior to the beginning of each of the governmental unit's fiscal years in which it proposes to claim central service costs," though the circular authorizes extensions "on a case by case basis." The State has acknowledged being late in submitting its SWCAP. But no provision of Circular A-87 imposes any penalty for a late filing, let alone authorizing a doubling of the amount owed to the federal government.

- *the time for implementing adjustments based on the cost/revenue reconciliation*. There is no time limit specified for making these adjustments; as shown above and in the State's previous filings, OMB has deliberately not set time limits for this step.

As this brief review makes clear, there were no time limits that New Mexico failed to meet that would justify DCA deviating from the means prescribed in Circular A-87 for

7

calculating the adjustment based on the reconciliation of billed to actual costs. This does not mean that there was no consequence of the late submission of the SWCAP. The State's tardiness in completing the reconciliation and submitting the SWCAP on which the adjustments were based has led to a much larger interest charge on the refund amount that the State owes and has paid to the federal government.

Another consequence of the late filing of the SWCAP is that the State lost the ability to select among the options provided in Circular A-87 for making the required adjustment, and that DCA was free to pursue the cash refund option, as it did in this case. But there is just nothing in the law or applicable regulations, nothing in the DAB decision, and nothing in Defendants' submissions to this Court, that would warrant the federal government deviating from the cash refund option to effect a recovery of $4 million on behalf of federal programs that were overcharged $1.85 million by the information services ISF. As shown in Plaintiff's Opposition Memorandum, Doc. 16, at 5-6, the action amounts to a forfeiture, which cannot be sustained absent the strongest showing that it was intended under the controlling authorities – a showing that is entirely lacking in this case.

## II.     Other Contentions of Defendants Are Without Merit.

### A.     Forfeiture Is An Appropriate Description of The Position Advocated by Defendants.

Defendants bridle at the State's use of the term "forfeiture" to describe the effect of the recovery that the Defendants seek to defend, and claim that its use amounts to introducing a new legal theory into the case not presented to the agency below.

The premise of the argument is wrong. The State did use the term "forfeiture" repeatedly in objecting to the amount of the disallowance before the DAB. *See* AR 64, 78, 84, 86. Moreover, its argument to the DAB mirrored that made to this Court – that the failure to take

account of undercharges in calculating the disallowance amount was punitive and in the nature of a penalty, since the State was entitled to receive undercharge amounts from the federal programs they were properly claimed against. *See* AR 65, 78, 80, 84 & n.19, 86, 87-90, 150, 153 n.1, 156 n.2.

In any case, the State's reference to forfeitures and the law relating to them was in response to the arguments advanced in the Defendants' Memorandum in support of their Motion for Summary Judgment. The term "forfeiture" aptly described the position that Defendants sought to defend in their initial filing, and the State's response was appropriate even if it had not made similar contentions before the DAB.[5]

  B.   This Court Should Determine the Proper Disallowance Amount.

The issue before the Court is essentially one of law – whether Defendants properly applied Circular A-87 when they omitted undercharges in calculating the amount to be disallowed. Assuming that issue is resolved favorably to the State, no point would be served by remanding the matter to the agency. The Court is in a position to resolve the controversy by determining that the disallowance amount must be calculated in the manner required by Circular A-87, by taking undercharges as well as overcharges into account – the method employed by New Mexico in its calculation. *See* Pl.'s Opp'n Mem., Doc. 16, at 1-3.

---

[5] Defendants' argument is one of "issue exhaustion" (not to be confused with "exhaustion of administrative remedies"). They have not shown that there is a requirement of issue exhaustion applicable to appeals of this kind, since they point to no statute or regulation requiring administrative issue exhaustion prior to a judicial challenge to a disallowance. *See Sims v. Apfel*, 530 U.S. 103, 107-08 (2000) ("[R]equirements of administrative issue exhaustion are largely creatures of statute. . . . Here, the Commissioner [of Social Security] does not contend that any statute requires issue exhaustion in the request for review."); *id.* at 108 ("Similarly, it is common for an agency's regulations to require issue exhaustion in administrative appeals. . . . Yet, SSA regulations do not require issue exhaustion.").

Defendants point to alleged "flaws" in New Mexico's calculation identified by the DAB. The State showed that the concerns were not valid (*id.* at 3 & n.1), and Defendants do not express agreement with the DAB's concerns. This is not surprising. DCA did not rely on the alleged "flaws" in defending its determination before the DAB. Nor could it have done so credibly since the so-called "flaws" related to the calculation of the beginning fund balances. The State's calculations, like those of DCA, followed the instructions in ASMB C-10 by using the previous year's ending fund balance.[6] Since Defendants neither raised the alleged "flaws" below nor support the DAB's position on them in this Court, they may not rely upon them to justify a remand in lieu of a final determination of the controversy by this Court. *See LaShawn A. by Moore v. Barry*, 144 F.3d 847, 852 n.6 (D.C. Cir. 1998); *Terry v. Reno*, 101 F.3d 1412, 1415 (D.C. Cir. 1996).[7]

## CONCLUSION

The State's proposal for calculating overcharges to federal programs properly aligns charges to those programs according to the benefits received, uses DCA-approved cost

---

[6] ASMC C-10 instructs States to include in the SWCAPs the "beginning fund balance for the fiscal year." ASMC C-10, ¶ 4.7. Further illustrations and instructions make clear that the beginning fund balance is the previous year's ending balance. *Id.*, Illus. 4-7 (reconciliation of retained earnings begins with "Balance Per Prior Year's Reconciliation of Fund to A-87"); *id.*, Instructions for Illus. 4-7, at ¶ 1 ("If the fund has been reviewed in prior years, the beginning balance will be the ending balance from the previous year's reconciliation schedule.").

[7] Defendants also cite the DAB's supposed "concern" with the State's treatment of the working capital reserve and the accuracy of the figures presented. Def. Opp'n at 3. Since DCA raised no issue with this calculation below, the DAB did not identify any basis for its concern, and Defendants have made no effort in this Court to demonstrate any error in this aspect of the State's calculation, the "concern" provides no basis for this Court to withhold a final determination of the disallowance amount.

allocation methodologies, includes allowable and allocable costs and only such costs, and is consistent with both OMB Circular A-87 and ASMB C-10. Defendants' approach, by contrast, fails on these fronts and is inconsistent with the controlling authorities. For these reasons, and those set forth in the State's previous submissions, the Court is respectfully requested to enter judgment reversing the determination of the Secretary (acting through his delegate, the Departmental Appeals Board) and determining that the proper amount of the disallowance owed by New Mexico to the federal government is $1,852,193.00.

Respectfully submitted,

\_\_/s/\_\_ Charles A. Miller _____
Charles A. Miller (D.C. Bar No. 8904)
Susannah Vance (D.C. Bar No. 496163)
Leah Pogoriler (D.C. Bar No. 973827)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-5410

*Attorneys for New Mexico Department of Information Technology*

February 22, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of February, 2008, I caused the foregoing Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment to be served on Mercedeh Momeni, counsel for Defendants, via the Court's Electronic Case Filing system.

       /s/  Leah Pogoriler
Leah Pogoriler
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., NW
Washington, DC  20004
(202) 662-6000